WILLIAM J. JONES V. C. Y. HUTCHINSON AND OTHERS.

A vendee under an executory contract, who is put in possession by his ven-
dor, may lease the land and receive the rent, although his contract may have
been broken, unless the vendor has entered upon the land, or given notice to
the vendee to quit, or in some way indicated his intention to renounce the
contract.

After final default in payment of the purchase money, the vendee is respon-
sible for rent to the vendor, provided the latter disaffirm the contract.

The lease of a defaulting vendee cannot protect the tenant with notice of the
default, nor after the commencement of suit for the recovery of the land.

But where a tenant has no notice of the intention of the vendor to renounce the
contract of sale to the party from whom he leased, and where he had exe-
cuted a negotiable promissory note, not due at the time of notice, for the rent,
he is not responsible for use and occupation to the vendor.

Error from Colorado. Tried below before Hon. N. H.
Munger.

Trespass by plaintiff against W. H. Moore for land, and to
recover the value of the use and occupation; amended peti-
tion makes C. Y. Hutchinson a party, alleging that he pretends
to claim the land described in plaintiff's original petition, and
that Joseph H. Guy, under whom the defendant Moore pre-
tends to claim the possession of the land, asserts a tenancy
under said Hutchinson.

Answer by Moore not guilty, and that he was in peaceable
possession of the premises under contract with Joseph H.
Guy; that said Guy and those under whom he holds were
rightfully entitled to the possession of said land; that they
were put in the possession thereof by the plaintiff in October,
1851, and that the plaintiff then, under a contract of sale for
a valuable consideration, parted with the title and possession
of said land which has been held ever since by the defendant

and those under whom he holds.  That defendant went into the possession of the premises under the contract with Guy without any notice of the claim of the plaintiff; and that the plaintiff by his silence induced the defendant to enter into said contract, for which he has paid a valuable consideration, and that said Guy be made a party defendant.

Hutchinson answered that he purchased the land sued from the plaintiff, for which he agreed to pay the sum of $8000, and received a title bond from plaintiff, and that he entered upon said land in good faith under the contract, paid the plaintiff $2000 of the purchase money and made valuable improvements on the place.  Guy answered that he rented the premises from Hutchinson and paid him for the same, and afterwards leased the place to Moore and set up generally the same matters of defence contained in the answer of Moore.

Moore filed an amended answer saying that he had paid Guy the price of the rent by executing to him his promissory note, not due at the time of the notice of plaintiff's claim.

Hutchinson afterwards, by plea, withdrew his defences previously filed and consented that a decree cancelling the sale be made upon the notes executed by him being also cancelled, &c.

On the trial the title bond from Jones to Hutchinson was read, the stipulation of which, on the part of Jones, was to make Hutchinson a title when the consideration was paid ; it was proved that $1000 was paid, but that the remaining $7000 was not paid at maturity.  On the part of the defence it was proven that Hutchinson went into possession under the contract made with Jones, and that he rented the place to Guy, and that Grey rented it to Moore and that Moore paid the price as contracted.

The verdict was as follows: " We the jury find that W. J. Jones on the 25th day of March, 1851, sold to C. Y. Hutchinson the premises ; that said Jones then executed to said Hutchinson his bond for title to said premises as soon as the pur-

chase money was paid ; that at the same time, in part payment
for said premises, said Hutchinson executed to said Jones his
certain promissory notes, each dated 25th March, 1851, each
for the sum of $2333 33⅓, one payable 1st January, 1853, the
second payable 1st January, 1854, and the third on 1st January,
1855, all drawing interest at 8 per cent. per annum from 1st
January, 1852 ; that none of said notes were paid by Hut-
chinson at the date of the institution of this suit, except one
thousand dollars of the first note ; that this suit was instituted
on the 20th March, 1855 ; that the rent of said premises was
not paid by Moore to Guy until after the institution of this
suit on 20th March, 1855 ; that Joseph H. Guy went into
possession of said land under a contract in writing between
said Hutchinson and Guy, entered into on 8th day of Feb-
ruary, 1855 ; that W. H. Moore went into possession under a
contract in writing between said Moore and Guy, entered
into on 14th February, 1855 ; that the rent of the place was
worth $300 per annum."

A judgment was entered thereon in favor of the plaintiff
for the land sued for, and decreeing that his bond for title be
cancelled and also the unpaid notes of Hutchinson executed
for the consideration of the same, and judgment against Hut-
chinson for $300, one year's rent of the premises.

The plaintiff assigns for error "that the Court erred in
rendering judgment in favor of the plaintiff against C. Y.
Hutchinson alone for the sum of $300, instead of rendering
judgment against all of the defendants in said cause for said
sum."


*John H. Robson,* for plaintiff in error. I. In Browning
v. Estes, (3 Tex. R. 474,) the Court say : "It is true that the
possession of the vendee who entered with the assent of the
vendor is lawful, nor can it be disturbed so long as he, with
fidelity, performs the obligations imposed by the stipulations
of the contract, but the character of this possession is changed,

and becomes tortious, when the vendee disaffirms the contract, disavows the title under which he holds, or refuses payment of the purchase money or such portion as may be due, and he then becomes liable as a trespasser to eviction at the suit of the vendor." (See also Barbour, 3 Sup. C. R. 576 ; 3 Barbour, 590 ; 7 J. J. Marshall, 318 ; 7 Blackford, 142 ; 5 Wendell, 26 ; 21 Wend. —; 7 Cowen's R. 747 ; 6 John. R. 46 and 49.)

II. It is a principle of law that a person cannot grant a larger estate of land than he himself is entitled to. A, having a term of ten years in land, cannot grant to B for twenty years.

If Hutchinson had the power to lease the premises to Guy, and Guy to Moore for the term of one year, the same power existed to lease the premises for the term of twenty years; and if the rent for the twenty years had been paid in advance by Moore and Guy and by Guy to Hutchinson, then according to the judgment rendered by the District Court, the plaintiff Jones would have had to look to Hutchinson alone for the twenty years rent. Such certainly is not the law.

To say that an injunction could have been obtained by the plaintiff against Moore, to compel him to pay the rent to the plaintiff instead of to Guy, is equivalent to saying that Moore paid the rent in his own wrong, for this suit was instituted long before Moore had paid the rent to Guy, and if the facts were sufficient to entitle the plaintiff to an injunction to prevent Moore paying the rent to Guy, they were certainly sufficient to entitle the plaintiff to recover the rent from Moore, and to notify him that if he paid the rent to any one but the plaintiff he did so at his peril. (Adams on Ejectment, 108 ; 1 Cowen, 122 ; 4 Cowen, 266 ; 2 Greenleaf's Cruise, 98 ; 1 Douglas, 21 ; 3 East. 499 ; 2 Greenleaf's Cruise, 104, Secs. 19 & 20.)

*W. R. Jarmon,* for defendant in error. It is urged there is

no privity of contract between Jones and Moore, to sustain an action for rent in this case. If Jones, as mortgagee, in the case supposed, having a superior title to Guy, a lessee of the mortgagor Hutchinson, and lessor of Moore, had recovered judgment for possession, and entered upon the land thereby, but left Moore in possession, he could only recover since the entry, but not before. (Mass v. Wilson, 10 Met. 126 ; Newall v. Wright, 3 Mass. 153.) In such case the lessee would be liable to his lessor for the rent, previous to the entry of the mortgagee. A vendor may have greater rights than a mortgagee. Yet, there is some similarity in their different rights ; both may be entitled to similar remedies, on default of the other party ; the foreclosure of the mortgage ; the sale to enforce vendor's lien, or to retake possession of the land. But, by the Common Law, the mortgagee, in the absence of a special contract, could recover possession under his absolute deed; and was entitled to the rents after the execution of the mortgage. (Taylor's Landlord and Tenant, 447 ; Chitty on Contracts, 290.)

It may be contended, in this case, that Moore, having been sued, before he paid the rent, is liable to Jones. To this it is answered, that at the time the contract for rent was made between Guy and Moore, there is no proof to show that Moore had actual knowledge of Jones' rights to the land. At that time he gave his note to Guy for the rent, which put it out of his power to control the matter, and was a payment of the rent so far as Jones is concerned. Upon the principle of the cases just referred to, relative to a mortgagee, Jones could only recover rents from Moore, after he, Jones, had entered upon the land, under legal proceedings. But Jones did not recover judgment until long subsequent to Moore's leaving the land, by the expiration of his contract for rent with Guy. (10 Met. 126 ; 3 Mass. 153.)

Moore cannot be liable to both Guy and Hutchinson. I have shown, by authority, that he could not resist the payment

of rent to Guy. How then could he be made liable to Jones?

Again, it is insisted that Jones having sold this land to Hutchinson, by executory contract, tenants and sub-tenants cannot be legally affected with knowledge of the fact, whether Hutchinson was a defaulting vendee or not; and whether he was such a defaulting vendee as would entitle Jones, the vendor, to recover the land and rents. Such legal acumen and knowledge is not required of an innocent renter.

Hutchinson was in possession by Jones' act. He was permitting Hutchinson to hold and claim the land as his own, publicly and notoriously, after the 1st day of January, 1855, which is the best evidence that an outside man would wish, to show that Hutchinson was not a defaulting vendee, if such evidence was necessary; and consequently entitled to rent the land.

Jones never contradicted Hutchinson's authority to rent; nor instituted suit against Hutchinson; enjoined or notified Guy or Moore, in possession, that he was entitled to the rents. Consequently he ought not to recover against the tenants or sub-tenants of his vendee. (8 Wendell, 483; Smith's Law of Contracts, t. p. 78, and numerous authorities cited in note.) He who trusteth the most must bear the loss, where an innocent third person is concerned. (Chitty on Contracts, 591, and note 2, and authorities there cited.)

Jones was willing to risk Hutchinson for the purchase money and the rent. He should not be permitted to have recourse against other parties situated as defendants in error.


HEMPHILL, CH. J. There can be no doubt of the right of Hutchinson to lease the land contingently to Guy, and of Guy to rent to Moore. Hutchinson, as the vendee under an executory contract, had been put into possession by his vendor, the plaintiff Jones. The last of the several notes given for the purchase became due on the first of January, 1855, and no

payments had been made except one thousand dollars on the first note.    But for aught that appears the vendee was still in possession, and the vendor had not, up to the time of renting, entered upon the land, or given notice to the vendee to quit,. or in any way indicated whether he intended to enforce or re- nounce the contract.    He might have enforced it by suit on the note, or for specific performance, and if so the continuing possession of the vendee would not have been tortious ; and he would have had lawful right to make leases commensurate with his possession.    There is no proof that Moore had any notice of the vendor's intentions at the time of his renting the place, or that in fact the vendor had determined on any par- ticular course of acting.    The mere fact that the last note had become due, could not operate as notice that the contract was at an end.    The two notes previously due had either been paid or the default had been waived by the vendor, and the vendee suffered to continue in possession ; and as there was nothing in the terms of the contract, or in the surrounding circum- stances, which showed that time was of the essence of the con- tract, it would be but a reasonable conclusion that the vendor would waive the default and insist on performance by the ven- dee, and if so the latter might lawfully make leases and re- ceive the rents, up to the time that the vendor would declare by some act or notice that the contract was at an end.    Such might have been the inferences of Mr. Moore, who appears to have had no notice of the actual state of the title, or whether it would be enforced or abandoned by the vendor.    He did not rent until the 14th February, 1855.    Up to that time the vendor had given no notice nor taken any, nor was any taken until the commencement of this suit on the succeeding 20th of March.

Had the defendant Moore paid the rent up to the 20th of March before suit was brought, most clearly he could not be compelled to repay them to the plaintiff.    He had not made such payment however, and the question is, whether he is lia-

ble to the vendor for these rents, and also for those accruing subsequent to the action. That the vendee, Hutchinson, was himself responsible for the rents from the time of his final default in payment of the notes cannot be questioned. In States where there are forms of action there is a diversity of decision as to whether the defaulting vendee can be sued in assumpsit for the value of the use and occupation, or whether he must be sued in trespass for the profits of the land. In most of the States the vendee can be made responsible for the mesne profits only as a trespasser. But in Alabama, New Hampshire, and in England, he may be sued for use and occupation. (6 Johns. 46; 7 Pickering, 301; 2 Dana, 295; 6 N. Hamp. 234; 7 Ala. 817; 1 Sugden, 264, (in notes;) Howard v. Shaw, 8 M. & W. 118; 12 Melson & Welsbry.)

But this distinction is of no consequence in this State, where there are no forms of action. If, on the facts, the party sued is liable, the plaintiff will recover judgment without regard to the form of the remedy, or to the distinctions between law and equity. The vendee who holds over after making default, or refusing payment, is responsible to the vendor for the profits, provided the latter disaffirm the contruct and does not seek its performance. As a general rule a person cannot create a larger estate in lands than he has in himself, and the lease of a defaulting vendee cannot protect the tenant after notice of the default, and especially after the commencement of suit for the recovery of the lands. But in this case the defendant Moore alleges a special equity, that he not only had no notice of the plaintiff's claim at the time of his renting, but that he then gave Guy a negotiable promissory note for the rent, which was not due at the time of the notice, and which might be transferred. If the defendant Moore had given a promissory note as alleged, and if this had been so transferred that he was liable in law to pay it to the holder at maturity, we are of opinion that he would not be responsible to the vendor for the rents. There would be no equity in subjecting him to this

double burthen.  It was by the negligence of the vendor, in not giving notice of his disaffirmance of the sale, that Moore was induced to rent from the vendee.  He may have acted very imprudently in giving a negotiable note, but to subject him to a double payment would be to allow the vendor to take the advantage, at least not to suffer from his own negligence. But though the defendant Moore alleges his execution of the note, yet there is no proof in the statement of the execution or transfer of such note.  The statement and special verdict are both meagre in their recitals of facts, and as the defence may have been sustained on some other ground than the liability of the defendant to a third person on the note, the making and payment of the note may have been omitted as unimportant facts.  Upon the whole case, although we might have been better satisfied had judgment been rendered against Moore, yet as it is believed the justice of the case has been attained, we must decline to reverse the judgment.  There is proof that the plaintiff received one thousand dollars from Hutchinson ; and that valuable improvements were made by both Hutchinson and Moore.  The plaintiff has recovered judgment against Hutchinson, and there is no proof or intimation of his insolvency ; and that the plaintiff will be likely to sustain loss.  By the plaintiff's act Hutchinson had the apparent ownership, and tenants under him should not be made to suffer unless it was very clear that injustice would otherwise be done to the vendor.  Upon the whole, we believe the judgment ought to be affirmed, and it is accordingly so ordered.

Judgment affirmed.