## BATEMAN et al. v. BROWN et al.
### (No. 2836.)

Court of Civil Appeals of Texas. Amarillo.
June 15, 1927.

Rehearing Denied Sept. 7, 1927.

1. **Landlord and tenant ⬅139(2)—In suit foreclosing vendor's lien and evicting tenant, refusal to find that tenant had prepared land for sowing held no error.**

In a suit foreclosing vendor's lien and evicting tenant of remote grantee, refusal to make finding that at time of service of citation tenant had prepared 30 acres for sowing oats *held* no error, where value of labor in preparing land was not shown and sowing was done after service of citation.

2. **Appeal and error ⬅920(5)—Where receiver was appointed in suit foreclosing vendor's lien and appointment was not attacked, appointment and taking possession of premises would be presumed lawful on appeal.**

In a suit foreclosing a vendor's lien wherein a receiver was appointed and the receivership proceedings were not attacked, it would be presumed on appeal, in support of judgment, that the appointment was fully authorized, and that the receiver took lawful possession of the premises in accordance with the court's order.

3. **Receivers ⬅71—Receiver's possession under court orders places property in custodia legis.**

The possession of a receiver appointed during foreclosure proceedings under orders of the court places the property in his hands in custodia legis.

4. **Landlord and tenant ⬅99—Where tenant is made party to suit foreclosing liens given prior to lease, his eviction by paramount title terminates lease.**

In a suit to foreclose vendor's liens given upon land prior to its lease, where lessor and tenant are both made parties and the tenant is evicted by paramount title, the eviction terminates the lease.

5. **Landlord and tenant ⬅99—Where tenant's eviction by paramount title on foreclosure of vendor's lien terminates lease, he cannot thereafter plant and occupy land under lease.**

In a suit foreclosing vendor's lien and evicting tenant of remote grantee, placing of property in custodia legis, followed by decree foreclosing lien and confirming receiver's possession, terminates lease, and the tenant cannot thereafter plant and occupy the land under the terms of the lease.

6. **Landlord and tenant ⬅139(2) — Tenant, evicted by paramount title on foreclosure of vendor's lien, may enter premises to harvest crop then growing on land; "emblements."**

Tenant, evicted by paramount title on foreclosure of vendor's lien, may, under doctrine of "emblements," which is synonymous with crops, enter upon the premises for the purpose of harvesting and removing a crop growing on land when foreclosure proceedings began.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Emblements.]

### On Motion for Rehearing.

7. **Landlord and tenant ⬅139(2)—Lease contract from defaulting remote grantee cannot protect tenant against eviction by vendor foreclosing lien.**

A lease contract between a tenant and a remote grantee of the original vendee cannot protect the tenant from losing his lease on foreclosure of vendor's lien, notwithstanding contention that the contract with the remote grantee had the effect of severing the crops to be grown during rental year and relieving them from sale in foreclosure proceeding.

8. **Vendor and purchaser ⬅260(1)—Tenants of defaulting vendee are bound by knowledge that original vendor might foreclose lien in case of default.**

Tenants of a defaulting vendee are bound by the knowledge that their lessor's title is subject to a vendor's lien, which might be foreclosed on default in interest payments.

Appeal from District Court, Grayson County; Silas Hare, Judge.

Suit by J. S. Brown and others against J. W. Bateman and others. Judgment for plaintiffs and defendants appeal. Affirmed.

Ed Westbrook and Webb & Webb, all of Sherman, for appellants.

Smith & Abernathy, of McKinney, for appellees.

HALL, C. J. On January 2, 1919, the appellee Brown and his wife conveyed certain land in Grayson county, and described in the appellee's petition, to J. O. Renfrow by warranty deed, and as part consideration Renfrow executed two notes, one for $10,000, and the other for $7,426.25. Both notes matured January 1, 1929, bore interest at 7 per cent. per annum, payable annually; each note contained the usual acceleration clause, providing that the holder at his option might declare both notes due upon failure to pay any annual installment of interest at its maturity. The vendor's lien was retained, and also a deed of trust was executed to better secure the payment of said notes. In March, 1920, Renfrow conveyed the land to R. C. Stone and A. B. Williams, who assumed the payment of said notes, and who on September 25, 1924, conveyed the land to C. C. Hamby, who assumed the payment of the notes, and who on March 10, 1925, conveyed the land to Miss Emma Stewart, who also assumed the payment of the notes, and who on November 10, 1925, conveyed the land to B. B. Banner, who assumed the payment of the notes. All of these deeds were duly recorded in Grayson county, the last two on December 8, 1925.

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The appellant J. W. Bateman had been leasing this land from the successive owners for a number of years, paying as rental the usual third and fourth. W. D. Bateman, son of J. W. Bateman, lived on the farm and assisted in cultivating the land.

About November 16, 1925, the defendant Banner contracted with Bateman, in writing, whereby the latter leased the farm for the year 1926, for a money consideration of $600, $175 of which was paid in cash, the remaining $425 to be paid December 5, 1925. Bateman did not remove from the farm, and sowed about 35 acres in wheat. Default having been made in the payment of interest, Brown exercised his option, declared the notes due, and filed this suit, on January 23, 1926, against all of the above-named parties to recover the amount of his debt, and for foreclosure of his vendor's and deed of trust liens upon the land. He alleged that the market value of the lands upon which foreclosure was sought was much less than the debt represented by the notes, and upon his application the court appointed a receiver who immediately qualified as such.

None of the defendants answered except J. W. Bateman and his son, W. D. Bateman; they alleged that on November 16, 1925, they entered into a rental contract with their co-defendant Banner, for the rental year of 1926, paid a cash consideration, and sowed 35 acres of the land in wheat. They further alleged that they broke and prepared for planting other parts of the land, and cut the stalks, and prayed that they be protected in their possession of the premises.

A trial to the court without the intervention of a jury resulted in a judgment in favor of plaintiff against the several vendees of the land, who had assumed payment of the notes, and a foreclosure of the liens as to all of the parties. The judgment further provides for immediate possession by the purchaser from the receiver, upon sale of the said lands under the orders of the court, subject, however, to the right of the Batemans of ingress and egress to harvest the wheat then growing on the premises without payment of any rents for such portion of said lands. Appellant Bateman admitted while upon the witness stand that he was informed of the existence of the notes and, liens, and that the liens might be foreclosed before he made his last payment of rental, namely, $425.

[1] The appellants Bateman complain of the refusal of the court to amend his finding of fact by adding thereto the further fact that at the time of service of citation upon them, in the suit, they had prepared 30 acres of the land in question for sowing oats. J. W. Bateman testified that he had prepared 30 acres of the land for sowing oats at the time the citation was served, but had not sown the seed at that time; that since the service of the citation he had bedded the land, har-rowed, and rebedded it, and about the 1st of February sowed the 30 acres in oats; that the sowing was done after he had been notified of the institution of this suit to foreclose. Bateman made no allegation or proof of any kind as to the value of the labor performed by him in cutting stalks and preparing the land, which he planted in oats.

Under the authorities to be hereinafter discussed, no error is shown by reason of the court's failure to find the additional fact requested.

The second proposition urged is that a tenant, who in good faith leases land in the autumn for the purposes of farming it the following year, and pays the rent in cash, is entitled to be protected against the foreclosure of liens on the land in his use of the premises for the rental year, for the purpose of planting, maturing, and gathering his crop during said year, and that it is error for the court to conclude as a matter of law otherwise and to render judgment depriving him of these rights. On the other hand, plaintiff Brown insists that the foreclosure of his liens, created before Banner leased the premises to appellants, ended the lease, and the purchaser from the receiver, under the orders of the court, was entitled to the possession of the lands subject to Bateman's right to emblements, and it is further insisted that the possession of the receiver in such case is the possession of the purchaser from him, effective from the time the court acquired jurisdiction of the property through the receivership. The appellee further insists that the doctrine of emblements as applied to the facts would give the Batemans, holding under a lease of uncertain duration, only the right to remove the crops planted by them before the termination of the lease, and with a right of ingress and egress for that purpose alone.

The Batemans made the last payment of rent on December 8, 1925, with knowledge at that time that an annual payment of interest would be due Brown upon the notes on January 2, 1926, and with further notice that if Banner, the landlord, did not pay the interest when due, Brown could and might exercise his option and declare the whole debt due and foreclose the liens. After the service of citations and the notice of the hearing upon the application for the appointment of a receiver, and after the receiver had been appointed, the Batemans harrowed and bedded the cultivated land, which had not been sown in wheat, and sowed about 30 acres of the harrowed land in oats.

One of the court's conclusions of law is that the receiver was entitled to possession of all of the land, as of the date of the filing of the suit and the issuance and service of the notice of the hearing for the appointment of the receiver, subject, however, to the Batemans' right of ingress and egress to harvest the wheat, under the doctrine of emblements.

[2] The appellants requested the court to amend his conclusions of law by holding that the receiver was entitled to possession as of the date of the filing of the suit and the issuance of notice and have thereby conceded that the receiver's right of possession begins at such time, and therefore we will not discuss that point further. The record does not contain the order of the court appointing the receiver, nor any of the evidence introduced upon the hearing, and no contention is urged in any way questioning or attacking the receivership proceedings. We must presume in support of the judgment that the appointment of the receiver was fully authorized, that he took immediate possession of the premises, and that his possession was lawful and in accordance with the order.

[3] A receiver is an arm of the court, and his possession under the orders of the court places the property in his hands in custodia legis. 1 Tardy's Smith on Receivers (2d Ed.) 84, § 26, Id., 127, § 31; 23 R. C. L. pp. 1245, 1246, §§ 62, 63; High on Receivers (4th Ed.) § 136; Riesner v. Gulf, C. & S. F. Ry. Co., 89 Tex. 656, 36 S. W. 53, 33 L. R. A. 171, 59 Am. St. Rep. 84; Worden v. Pruter, 40 Tex. Civ. App. 118, 88 S. W. 435.

[4] This being an action to foreclose liens given upon the land prior to its lease, and the lessor and the tenant both having been made parties defendant, and the receiver having been appointed and having taken possession of the property as of the date of the filing of the suit and the issuance of notice, there is presented a case of eviction of the tenant by paramount title, the effect of such eviction being to end the relation of landlord and tenant and terminate the lease. 2 Tiffany on Landlords and Tenants, page 1300; 36 C. J. 271; 14 A. L. R. 664, Anno.; Basin Park Hotel Ass'n v. Arkansas Co., 151 Ark. 322, 236 S. W. 275; McGill v. Brown, 215 Mo. App. 402, 256 S. W. 510. This court so held in Wootton v. Bishop (Tex. Civ. App.) 257 S. W. 930, and a writ of error was refused. If the Batemans had not been made parties defendant to this action, the lease would not have terminated by the foreclosure proceedings and decree. Lockhart v. Ward, 45 Tex. 227; Alford v. Carver, 31 Tex. Civ. App. 607, 72 S. W. 869.

[5, 6] The placing of the property in custodia legis, followed by a decree which foreclosed the prior liens and confirmed the possession taken by the receiver on January 23d, has the legal effect of terminating the lease and the relation of landlord and tenant between Banner and the Batemans upon the last-named date. It follows that the Batemans could not thereafter proceed to plant and occupy the land under the terms of such lease. The only rights they had as against Brown, the holder of the prior liens, or the purchaser under him, or the receiver, existed in virtue of the doctrine of emblements, which was to enter upon the premises for the purpose of harvesting and removing the wheat crop then growing upon the land. Dinwiddie et al. v. Jordan (Tex. Com. App.) 228 S. W. 126. Emblements are said to be synonymous with crops, and the doctrine is applied where the lease has been terminated by the act of God, or by law, and the right has never been construed as entitling the tenant to plant further crops and proceed under the lease. As said by Judge Boyce, in Wootton v. Bishop, supra:

"A foreclosure of a lien, created prior to the lease if the lessee is a party to the foreclosure, puts an end to the lease itself, and the purchaser has the right in such case to immediate possession of the property. Some of our decisions hold that the lease severs the crops from the land so that they are thereafter regarded as personalty and do not pass with the sale of the land. Brown v. Leath, 17 Tex. Civ. App. 262, 42 S. W. 655, 44 S. W. 42; Lombardi v. Shero, 14 Tex. Civ. App. 594, 37 S. W. 614, 971 * * *; Willis v. Moore, 59 Tex. 628, 46 Am. Rep. 284. And it may be that the tenant, on application of the doctrine of emblements to such facts, would have the right of entry for the purpose of cultivating and removing such crops. Brown v. Leath, supra. But such right would not be by virtue of the continuance of the lease contract, but exists only on termination of the lease."

The Batemans did not by cross-action seek to recover from Banner by reason of his failure to pay the interest and the consequent forfeiture of their lease contract, and that issue is not before us.

We think a proper judgment has been entered, and it is therefore affirmed.

On Motion for Rehearing.

[7] The principal contention of the appellants in the motion is that the contract made between Banner and appellants for the lease of the land, in consideration of money rent, part of which was evidenced by a note, was not only a legal contract when it was made, but had the effect of severing the crops to be grown on the land during the rental year, from the soil, and relieves them from sale under the foreclosure proceeding. It may be admitted that some of the authorities cited by appellants from other jurisdictions so hold, but that is not the general rule, and the courts of Texas have held to the contrary.

In the case of Jones v. Hutchinson, 21 Tex. 370, the Supreme Court held that the lease contract of a defaulting vendee could not protect the tenant with notice of the default, and said:

"As a general rule a person cannot create a larger estate in lands than he has in himself."

[8] As stated in the original opinion, the appellants knew that their lessor might default in the payment of the purchase money and that his vendor had the right to exercise

his option and foreclose his lien. They did not by their pleadings seek to recover against the defaulting vendee, and are bound by their knowledge of the condition of their lessor's title. This is the holding of the authorities cited in the original opinion, as well as in the Jones Case, and the rule is further recognized in F. Groos & Co. v. Chittim (Tex. Civ. App.) 100 S. W. 1006, 1010. See L. R. A. 1915C, page 204, note 2 (a).

Believing that the case has been properly disposed of by the original opinion, the motion for rehearing is overruled.